IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THERESA A. ESTRADA, et al.,

Plaintiffs,

v. No. 1:25-cv-00624-KG-JFR

FEDERAL EMERGENCY
MANAGEMENT AGENCY, et al.,

Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Federal Emergency Management Agency's ("FEMA") Motion to Dismiss, Doc. 11, Plaintiffs' response, Doc. 19, and FEMA's reply, Doc. 24. For the reasons below, the Court grants in part and denies in part the motion.

***I. Background***

Plaintiffs' claims arise from the Hermit's Peak/Calf Canyon Fire that scorched 340,000 acres of land in northeastern New Mexico in 2022. *Old Wood, LLC v. Fed. Emergency Mgmt. Agency*, 2026 WL 1078698, at *2 (D.N.M. 2026). The U.S. Forest Service assumed responsibility for the fire. *See* Hermit's Peak/Calf Canyon Fire Assistance Act, Pub. L. No. 117-180, § 102(a)(8), 136 Stat. 2114, 2168 (2022) ("Hermit's Peak Act"). Congress designated FEMA as the agency charged with administering the Hermit's Peak Act and authorized FEMA to promulgate regulations establishing procedures for the processing and payment of claims. § 104(a)(2), (f)(1). The statute requires FEMA to fix and determine the amount of compensation to be paid for a claim "[n]ot later than 180 days after the date on which a claim is *submitted* under this Act[.]" § 104(d)(1)(A)(i) (emphasis added). To submit a claim under the Hermit's Peak Act, a claimant must file a Notice of Loss. 44 C.F.R. § 296.10(a). FEMA promulgated a

rule stating that "A Notice of Loss that is completed and properly signed is deemed to be filed on the date *it is received and acknowledged* by the Claims Office." 44 C.F.R. § 296.10(f) (the "Claim Submission Rule") (emphasis added).

Plaintiffs, 20 individuals and one living trust, suffered property damage because of the Hermit's Peak Fire. Doc. 1 at 6. They submitted claims for compensation to FEMA as contemplated by the Hermit's Peak Act. *Id.* Plaintiffs allege that more than 180 days have passed since they submitted claims for compensation, and FEMA has yet to issue a final determination as required. *Id.* at 5.

Plaintiffs filed the present action requesting the Court set aside the Claim Submission Rule under 5 U.S.C. § 706(2) of the Administrative Procedure Act ("APA"). Doc. 1 at 15–18. They argue that the Hermit's Peak Act requires the payment of claims within 180 days of when a Notice of Loss is filed, not when FEMA acknowledges that a claim is submitted. *Id.* at 14. Plaintiffs also seek an order declaring that: (1) "the [Hermit Peak Act's] 180-day deadline begins from the date a claimant submits their claim, consistent with the Act, not when FEMA 'acknowledges' the claim"; (2) "FEMA must determine and settle the amount payable for a claim within 180 days following the claim's submission"; (3) "FEMA must immediately pay Plaintiffs' claims that exceed the 180-day deadline from the date of submission"; (4) "in the event FEMA does not provide a determination providing a fixed amount on a claim within 180 days, that FEMA is deemed to have defaulted on the claim, and FEMA must immediately pay the claim in full"; and (5) "FEMA must appoint an experienced and competent claims administrator to ensure timely processing and payment of claims." Doc. 1 at 19–20.

FEMA moves to dismiss Plaintiffs' Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 11 at 1. It argues that Plaintiffs' claims are precluded by a prior

settlement agreement reached in *Montoya v. Fed. Emergency Mgmt. Agency*, No. 23-cv-977-JB-JFR, Doc. 60-1 (Oct. 2, 2024). The *Montoya* Plaintiffs similarly challenged FEMA's Claim Submission Rule and refusal to appoint a claims administrator, but also sought a declaratory judgment prohibiting FEMA from contacting represented plaintiffs without involving counsel or otherwise interfering with the attorney-client relationship. *Montoya*, No. 23-cv-977, Doc. 1 at 3, 24-25, 32-33, 36. The Settlement Agreement included a release that states:

> The Plaintiffs/Petitioners hereby release and forever discharge Defendants/Respondents and their successors, the United States of America, any department, agency, or establishment of the United States, and any past or present officers, employees, agents, successors, assigns, or representatives of the United States or any department, agency, or establishment thereof, from the Subject Claims raised in the Litigation and any past, present, or future claims related to the same subject matter as the Subject Claims. This Agreement does not release any other pending or potential claims, including in the following cases: *Cavitt Olguin v. FEMA*, 1:24-cv-242 (D.N.M.); *Dolan v. FEMA*, 1:23-cv-908 (D.N.M.); *Gallegos v. FEMA*, 1:24-cv-170 (D.N.M.); *Lands v. FEMA*, 1:23-cv-869 (D.N.M.); or *Seaverns v. FEMA*, 1:24-cv-207 (D.N.M.).

*Montoya*, No. 23-cv-977-JB-JFR, Doc. 60-1 at 3. The Settlement Agreement also contains a provision dictating that all claimants represented by Singleton Schreiber, LLP, ("Singleton") must participate in certain processes described in the agreement. *See id.* at 10 (noting that "[t]he non-monetary relief provisions in paragraphs (3), (4), and (5) of this Agreement shall apply for the term of this Agreement to all claimants under the Act represented by Plaintiffs'/Petitioners Counsel). The "non-monetary relief" provisions outline procedures for FEMA to communicate and coordinate with plaintiffs' counsel to ensure the timely submission of documents and payment of claims. *Id.* at 3–8. Lastly, the dispute resolution provision sets forth procedures for resolving any dispute (1) "concerning the non-monetary provisions described in paragraphs (3),

(4), and (5) of this Agreement," and (2) "relating to the interpretation or implementation of this Agreement before bringing the matter to the court's attention." *Id.* at 8–9.[1]

FEMA separately contends that Plaintiffs' claim for declaratory judgment "is not a form of relief available under the APA and consequently falls outside of the APA's sovereign immunity waiver." Doc. 11 at 2. It also asserts that Plaintiffs' requested relief circumvents the Hermit's Peak Act's judicial review procedures which require a final decision from FEMA before a claimant may seek review by the Court. *Id.* at 18. Finally, FEMA argues that its decision not to appoint an independent claims manager is committed to agency discretion by law and therefore precluded from judicial review. *Id.* at 19–20. Plaintiffs oppose the motion. *See generally* Doc. 19.

## ***II. Legal Framework***

"Rule 12(b)(1) provides for challenges to the court's subject-matter jurisdiction, while Rule 12(b)(6) provides for motions to dismiss the complaint for failure to state a claim upon which relief can be granted." *Davis ex rel. Davis v. U.S.*, 343 F.3d 1282, 1294 (10th Cir. 2003) (citation modified). Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms: (1) "a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint[;]" or (2) "a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction

[1]The *Montoya* Plaintiffs subsequently filed a Motion for Relief from Judgment and to Enforce the Settlement asserting FEMA violated the settlement agreement. Doc. 11 at 8; *Montoya*, No. 23-cv-977, Doc. 57. The parties submitted briefs and the court held a hearing on the motion. *Montoya*, No. 23-cv-977, Docs. 60, 63, 69. No ruling was issued because the parties agreed to engage in regular mediations to resolve disputes with the Settlement Agreement. *Montoya*, No. 23-cv-977, Docs. 60, 63, 69, 72, 74, 76, 79. The *Montoya* Plaintiffs ultimately withdrew their motion following a settlement conference. *Montoya*, No. 23-cv-977, Doc. 86. They noted that they would pursue "unresolved issues raised in the motion in other pending lawsuits." *Id.* at 2.

depends." *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995) (citation modified). In reviewing a facial attack on a complaint for lack of jurisdiction, the court must accept the plaintiff's allegations as true just as in a motion brought pursuant to Rule 12(b)(6). *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) (citing *Riggs v. City of Albuquerque,* 916 F.2d 582, 584 (10th Cir. 1990)); *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). When there is a factual attack, the Court has discretion to go beyond allegations contained in the complaint and consider evidence presented by the parties. *Holt,* 46 F.3d at 1002. "In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion." *Id.* at 1003. A "district court 'is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case."' *Knellinger v. Young*, 134 F.4th 1034, 1041 (10th Cir. 2025) (quoting *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000)). "A jurisdictional question is intertwined with the merits of the case when "the jurisdictional question requires resolution of an aspect of the substantive claim." *Id.* This occurs when the "resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." *Pringle*, 208 F.3d at 1223.

"[O]n a Rule 12(b)(1) motion, the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)." *Pearl River Union Free Sch. Dist. V. Duncan*, 56 F. Supp. 3d 339, 351 (S.D.N.Y. 2014) (citation modified). Under both standards, the reviewing court "must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw

all reasonable inferences in the plaintiff's favor." *Hernandez v. Grisham*, 499 F. Supp. 3d 1103, 1044–45 (D.N.M. 2020).

The jurisdictional challenges raised in FEMA's motion are not a factual challenge requiring a ruling on the merits. *See* Doc. 11 at 15-17. The Court will therefore not convert FEMA's Rule 12(b)(1) motion to a motion for summary judgment.

## ***III. Analysis***

The Court concludes that: (A) Plaintiffs' claims are not barred by claim preclusion; (B) the APA waives sovereign immunity for Plaintiffs' claim for declaratory judgment; (C) Plaintiffs' requested relief in the form of default judgment is unavailable under the APA; and (D) FEMA's decision not to appoint an independent claims manager is reviewable.

### ***A. Plaintiffs' claims are not precluded by the* Montoya *Settlement Agreement.***

The *Montoya* Settlement Agreement does not preclude Plaintiffs' claims. Claim preclusion or res judicata "is *not* a jurisdictional bar; it is an affirmative defense, and, thus, would not defeat subject matter jurisdiction." *Franklin Sav. Corp. v. United States,* 385 F.3d 1279, 1286 (10th Cir.2004) (citation modified). While claim preclusion is usually plead as an affirmative defense in a party's answer, it can be asserted in a Rule 12(b)(6) motion when all relevant facts are present in the court's record and the court takes judicial notice of them. *See Tri-State Truck Ins., Ltd v. First Nat'l Bank of Wamego*, 564 Fed. Appx. 345, 347 (10th Cir. 2014). Here, the *Montoya* Settlement Agreement is a record filed in the *Montoya* case which was pending in this district. *See Montoya*, No. 23-cv-977, Doc. 60-1. The Court hereby takes judicial notice of its own records. *See Rose v. Utah State Bar*, 471 Fed. Appx. 818, 820 (10th Cir. 2012) (holding a motion to dismiss need not be converted to a motion for summary judgment when a court "'takes judicial notice of its own files and records, as well as facts which

are a matter of public record.'") (quoting *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir.2006).

"[C]laim preclusion prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 412 (2020). Claim preclusion applies when there is "(1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." *Johnson v. Spencer*, 950 F.3d 680, 693 (10th Cir. 2020) (citation modified). Settlement agreements "have claim-preclusive effect between the parties to the settlement." *Denver Homeless Out Loud v. Denver, Colo.*, 32 F.4th 1259, 1271 (10th Cir. 2022). "Contractual provisions can supplant traditional preclusion principles if it is clear the parties intended preclusion as a part of their agreement." *Id.* (citation modified).

It is undisputed that Plaintiffs are not a party to the *Montoya* Settlement Agreement. Doc. 11 at 13; Doc. 19 at 9. FEMA, however, contends that "[t]he terms of the Settlement Agreement evince the intent of the parties to conclusively resolve the dispute regarding the Claim Submission Rule and preclude future parties represented by the same counsel from filing similar challenges." Doc. 11 at 21. The Court disagrees. The Settlement Agreement's release provision dictates that "Plaintiffs/Petitioners hereby release and forever discharge Defendants/Respondents...from the Subject Claims raised in the Litigation and any past, present, or future claims related to the same subject matter as the Subject Claims. This Agreement does not release any other pending or potential claims." *See Montoya*, No. 23-cv-977, Doc. 60-1 at 3. The plain language of the release is unambiguous—it applies solely to the *Montoya* Plaintiffs. *Compare id. with Denver Homeless*, 32 F.4th at 1272 (stating that "[a]ll persons in the City and

County of Denver. . .hereby release, acquit, and forever discharge [defendants]. . .from any and all liabilities, claims, demands, rights, controversies, agreements, damages, actions, causes of actions...which might exist or might be in any way related to or giving rise to above-referenced Lawsuit").

FEMA argues that the inclusion of non-party claimants represented by Singleton in the Settlement Agreement demonstrates that the parties intended for the settlement to apply to Plaintiffs. Doc. 11 at 14. FEMA's broad interpretation is unsupported by the plain text of the Settlement Agreement. Under the terms of the agreement, only the "non-monetary relief" provisions apply to all claimants represented by Singleton. *Montoya*, No. 23-cv-977, Doc. 60-1 at 10. These paragraphs govern the processes by which FEMA and plaintiffs' counsel communicate to ensure the timely submission of documents and payment of claims. *Id.* at 3–8. It is evident that the parties intended to provide for a global claims processing policy, not to prevent claimants from bringing similar claims against FEMA. *See id.* at 3 ("This Agreement does not release any other pending or potential claims"). The Court is not persuaded that the parties intended for the Settlement Agreement to have any preclusive effect. Consequently, Plaintiffs' claims are not barred by claim preclusion.

***B. Plaintiffs may bring their claim for declaratory relief under the APA.***

Next, the Court concludes that the APA's waiver of sovereign immunity applies to Plaintiffs' requests for declaratory relief. FEMA asserts that the declaratory relief sought by Plaintiffs is unavailable under the APA because it seeks monetary damages. Doc. 11 at 17.

"[S]overeign immunity is jurisdictional in nature, a plaintiff bringing a claim against the United States must plead an applicable waiver of sovereign immunity to establish the court's subject-matter jurisdiction." *Purgatory Recreation I, LLC v. United States*, 157 F.4th 1173, 1190

(10th Cir. 2025). The Declaratory Judgment Act, 28 U.S.C. § 2201(a), "does not confer jurisdiction upon federal courts" nor does it "provide a waiver of sovereign immunity." *Id.* at 1189. The APA, however, contains a general waiver of sovereign immunity in all civil actions brought against the United States where the plaintiff is not seeking monetary damages. *United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 549 (10th Cir. 2001) (citing 5 U.S.C. § 702). To determine whether a claim seeks monetary relief and therefore falls outside of the purview of the APA, courts evaluate whether "the 'prime objective' or 'essential purpose' of a suit is to recover money." *Normandy Apartments, LTD. v. U.S. Dept. of Housing & Urban Dev.*, 554 F.3d 1290, 1296 (10th Cir. 2009). Where a party seeks funds "to which a statute allegedly entitles it, rather than money in compensation for sustained losses, the relief sought is something other than 'money damages.'" *Suburban Mortg. Assoc., Inc. v. U.S. Dep't of Housing & Urban Dev.*, 480 F.3d 1116, 1125 (Fed. Cir. 2007) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 900 (1988)).

Here, Plaintiffs' prime objective for seeking declaratory relief is not to obtain monetary damages from FEMA, but to "enforce the statutory mandate itself, which happens to be one for the payment of money." *Bowen*, 487 U.S. at 900; *see also* Doc. 19 at 12-13; Doc. 1 at 21-22. The Hermit's Peak Act entitles victims of the Hermit's Peak/Calf Canyon Fire to compensation for "injuries resulting from the fire" and provides "for the expeditious consideration and settlement of claims for injuries." § 102(b)(1)–(2). The statute requires FEMA to fix and determine the amount of compensation to be paid for a claim "[n]ot later than 180 days after the date on which a claim is submitted under this Act." § 104(d)(1)(A)(i) (emphasis added). Courts have construed this requirement to mandate that FEMA "issue a judicially reviewable determination within 180 days." *Gallegos v. Fed. Emergency Mgmt. Agency*, 2025 WL 961665,

at *33 (D.N.M.). By seeking a declaration requiring FEMA to issue claim determinations within 180-days, deeming FEMA to have defaulted on claims that exceed the 180-day deadline from the date of submission, and ordering FEMA to immediately pay defaulted claims in full, Plaintiffs are requesting the Court "enforce the statutory mandate itself." *Bowen*, 487 U.S. at 900. Stated differently, the primary purpose of Plaintiffs' action is to compel FEMA to fix and determine the amount to be paid for claims within 180 days as contemplated by the Hermit's Peak Act. Whether the Court's remedy may ultimately result in monetary relief does not transmute Plaintiffs' suit to one for monetary damages. *See Normandy Apartments*, 554 F.3d at 1298 (distinguishing "compensatory relief to *substitute* for a suffered loss" from "specific remedies that have the effect of compelling monetary relief" (emphasis in original)). Given that the essential purpose of the suit is to obtain equitable relief, the APA's waiver of sovereign immunity applies to Plaintiffs' claim for declaratory judgment.

### *C. Default judgment is not an available remedy under the APA.*

The Court will dismiss Plaintiffs' request for default judgment as such relief is unavailable under the APA. Plaintiffs frame their request for default judgment as "simply asking the Court to allow an expedited judicial review process when FEMA fails to comply with the 180-day rule[.]" Doc. 19 at 14. Plaintiffs in effect request judicial review of FEMA's failure to timely pay claims under the Hermit's Peak Act. The Court is unable to grant the requested relief because the appropriate remedy under the APA for agency inaction is to compel the agency to act, not to enter default judgment. *See Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004) ("The APA provides relief for a failure to act in § 706(1): 'The reviewing court shall...compel agency action unlawfully withheld or unreasonably delayed.'").

Plaintiffs' arguments to the contrary are unavailing. *See* Doc. 19. Plaintiffs first contend that the Hermit's Peak Act's waiver of sovereign immunity permits the Court to review claims and award damages. Doc. 19 at 13. The Hermit's Peak Act contains a limited waiver of sovereign immunity for claimants seeking judicial review of a final decision by FEMA. *Gallegos*, 2025 WL 961665, at *38; *see also* Hermit's Peak Act, § 104(h)(4)(i)(1) (permitting claimants who receive "a final decision of the Administrator" to bring an action "to modify or set aside the decision, in whole or in part"). The Hermit's Peak Act allows Plaintiffs to "seek judicial review, even if they have not received 'final decision,' as FEMA's regulations define that term." *Gallegos*, 2025 WL 961665, at *38. The judicial review provision of the Hermit's Peak Act provides that the Court may "modify or set aside the decision, in whole or in part." § 104(i)(1).

Indeed, the Court may review FEMA's failure to issue a claim determination within 180 days; however, Plaintiffs have not demonstrated that the Court may award default judgment against FEMA for its failure to act. On its face, the Hermit's Peak Act's judicial review provision does not contemplate an automatic default award for a claim when FEMA fails to take action within 180 days. Instead, it permits the Court to modify or set aside a claim determination unsupported by substantial evidence. *See* § 104(i)(3). Although Plaintiffs maintain that the Hermit's Peak Act grants the Court authority to enter judgment against FEMA, *see* Doc. 19 at 14, they fail to provide support for their argument. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("[O]n a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation[.]" (citation modified)). Absent developed argument, the Court declines to conclude that it has the authority to enter default judgment under the Hermit's Peak Act.

The Court is equally unpersuaded by Plaintiffs' contention that "Federal Rule of Civil Procedure 55(d) gives the Court authority to enter default against the government." Doc. 19 at 14. A court may enter a default judgment based on a failure to appear or otherwise defend, or as a sanction in a discovery dispute. *Fed. Deposit Ins. Co. v. Daily*, 973 F.2d 1525, 1530 (10th Cir. 1992); Fed. R. Civ P. 55(a). The Court understands Plaintiffs to argue that FEMA has failed to comply with court orders mandating that FEMA issue claim decisions within the statutorily imposed 180-day deadline. Doc. 19 at 14–15. To the extent Plaintiffs ask the Court to enter default judgment pursuant to Rule 55 as a sanction, the Court declines to do so. The Court has not entered an order in this case requiring that FEMA comply with the Hermit's Peak Act's 180-day deadline. FEMA therefore has not failed to comply with a court order.

For the reasons stated, the Court dismisses Plaintiffs' request for an order deeming FEMA to have defaulted on all claims not decided within 180 days and requiring FEMA to immediately pay the claim in full.

***D. The Court may review FEMA's decision not to appoint an independent claims manager.***

As a final matter, while FEMA's decision not to appoint an independent claims manager is discretionary, it is reviewable under the APA. "[A]gency action is not subject to judicial review to the extent that such action is committed to agency discretion by law." *Lincoln v. Vigil*, 508 U.S. 182, 190–91 (1993) (citation modified). Judicial review of agency action is barred "where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Id.* at 191. However, agencies do not have the discretion to "simply to disregard statutory responsibilities[.]" *Id.* at 193; *see also Ramah Navajo Chapter v. Salazar*, 644 F.3d 1054, 1064 (10th Cir. 2011) ("[A]n agency may create ill will by ignoring congressional intent as expressed in legislative history.").

The Hermit's Peak Act states that FEMA "may appoint an Independent Claims Manager." § 104(a)(3). Although Congress gave FEMA the discretion to appoint an independent claims manager, Plaintiffs have plausibly alleged that FEMA's decision not to exercise its discretion is contrary to congressional expectations. Doc. 1 at 11–13; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (quotations omitted). The Hermit's Peak Act requires the expeditious consideration and settlement of claims. § 102(b)(2). Plaintiffs allege that FEMA has failed to issue claim determinations in a timely manner and has issued regulations that have arbitrarily prolonged the payment of claims. Doc. 1 at 3–4, 14–17. In their view, "FEMA's decision not to appoint an independent claims administrator despite its repeated delays and failures was and has been an abuse of discretion." Doc. 19 at 18; *see also* Doc. 1 at 4, 11-12, 15. Viewing the facts in the light most favorable to Plaintiffs, the Court concludes that they have stated a claim for abuse of agency discretion under the APA. *See* 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.").

## *IV. Conclusion*

For the reasons stated, the Court grants in part and denies in part FEMA's motion to dismiss, Doc. 11. The Court dismisses Plaintiffs' request for a declaratory judgment ordering that FEMA is deemed to have defaulted on claims not decided within 180 days and requiring FEMA to immediately pay the claims in full. *See* Doc. 1 at 20.

IT IS SO ORDERED.

/s/Kenneth J. Gonzales___________________
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.